UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
                                    :
SEAN THURMAN,
                                    :
            Plaintiff,                      **REPORT & RECOMMENDATION**
                                    :
        -against-                           **13 Civ. 5194 (CM)(MHD)**
                                    :
BUN BUN MUSIC, et al.,
                                    :
            Defendants.
-----------------------------------x

TO THE HONORABLE COLLEEN MCMAHON, U.S.D.J.:


On July 25, 2013, <u>pro se</u> plaintiff Sean Thurman commenced this

suit under the Copyright Act, 17 U.S.C. § 101 <u>et seq.</u>, against five

defendants -- Bun Bun Music, Inc., Big East Entertainment Group,

Inc., Bun Bun Music Publishers, Inc., J&B Management, and B-Boy

Records & Associates, Inc. He seeks damages for infringement of a

copyright that plaintiff allegedly purchased on July 23, 2013, two

days before he filed this lawsuit. The District Court has granted

defaults against all defendants (Dkt. 10, 21),[1] and referred this

case to us to conduct an inquest.

---

[1] The District Court originally entered a default solely
against Bun Bun Music, Inc. (October 24, 2013, Endorsed Order).
It later entered a default against the remaining defendants.
(Order dated Sept. 16, 2014).

Pursuant to our order of March 27, 2014 (Dkt. 18), plaintiff filed documents supporting his claim for $1,500,000.00 in damages. (Dkt. 20). Our March 27, 2014 scheduling order authorized defendant Bun Bun Music, Inc. to serve opposition papers, which it failed to do. Our November 11, 2014 scheduling order authorized defendants Bun Bun Music Publishers, Inc, Big East Entertainment Group, Inc., J&B Management, and B-Boy Records & Associate, Inc. to serve opposition papers, which they also failed to do.

For the reasons explained below, we recommend denying relief to plaintiff, both monetary and injunctive. We do so based on his failure to plead a plausible claim and his failure to prove any damages.

**THE COMPLAINT**

Plaintiff alleges that on July 23, 2013 he purchased the copyright to the legendary hip hop record, "Criminal Minded,"[2] from copyright holders B-Boy Records, Inc. and B-Boy Records World Corporation.   In support of this allegation he attached to the complaint a copy of a promissory note and a "Bill of Sale of Personal Property." According to the proffered documents, plaintiff paid for the copyright by executing a promissory note for $500,000.00,[3] although neither the note nor the bill of sale specified any payment terms. (Complaint ¶ 9, Ex. A). The bill of

---

[2] Rolling Stone lists "South Bronx," a track on the record, as 42nd on its list, "The 50 Greatest Hip Hop Songs of All Time." http://www.rollingstone.com/music/lists/the-50-greatest-hip-hop-songs-of-all-time-20121205/boogie-down-productions-south-bronx-19691231 (last visited Nov. 12, 2014). The album is considered foundational to hardcore rap. See "Review by Steve Huey," All Music, http://www.allmusic.com/album/criminal-minded-mw0000194829 (last visited Nov. 12, 2014); and "Boogie Down Productions: Criminal Minded," Sputnik Music, http://www.sputnikmusic.com/review/34916/Boogie-Down-Productions-Criminal-Minded/ (last visited Nov. 12, 2014).

[3] The United States Copyright Office lists "Criminal Minded" under registration number and date PA0000934688 / 1999-01-22 , and attributes ownership at the time of last registration to B-Boy Records, Inc. and B-Boy Records World Corp.. "Public Catalog Search," United States Copyright Office, http://cocatalog.loc.gov (last visited, Nov. 12, 2014).

sale also does not expressly grant Mr. Thurman any right to recover
for pre-assignment infringements of the copyright. (Id., Ex. A).


     Plaintiff also alleges that -- apparently prior to his
purchase of the copyright -- defendants "issued fraudulent licenses
to third parties" without the permission of the copyright owners,
that is, B-Boy Records, Inc. and B-Boy Records World Corp.. (Compl.
¶ 11). He further alleges, "upon information and belief," that B-
Boy Records, Inc. and B-Boy Records World Corp. never "signed over"
their "original rights to [their] catalog," and that only B-Boy
could legitimately transfer those rights. (Id. ¶ 16). He goes on to
say that defendant J&B Management served only as the music manager
for B-Boy Records, Inc., and that it used this status to gain
access to B-Boy's master recordings, royalty statements, contracts,
and other important information" and then, in the guise of Bun Bun
Music, Big East Entertainment Corp., Bun Bun Publishers, and B-Boy
Records & Associates, it represented itself as authorized to
collect royalties from licensees on behalf of B-Boy Records, the

legitimate owner of the licensed copyrights. (<u>Id.</u> ¶¶ 16-20).
Plaintiff further alleges that defendants have harmed him "by
registering with ASCAP, Harry Fox Agency and other alleged entities
the work of the copyright owners." (<u>Id.</u> ¶ 22).[4]

Plaintiff claims the right to sue for defendants' misconduct
because he "incurred liability for all outstanding licenses and
contracts" related to the copyright when he purchased it from the
proper owners. (Compl. ¶ 10). He seeks somewhat vaguely stated
relief that we interpret as encompassing damages and various forms
of injunctive relief related to defendants' actions prior to
plaintiff's ownership of the copyright, as well as damages and
injunctive relief in aid of his present status as the copyright
owner. (Compl. ¶¶ 24-27).

Defendants are alleged to be New York corporations operating

---

[4] Defendants are listed by ASCAP as the
publisher/administrators of the music in dispute here under IPI
number 128339470. ASCAP, "ACE Search"
https://www.ascap.com/Home/ace-title-search/index.aspx (last
visited Jan. 15, 2015).

from a shared address in Manhattan.[5] Plaintiff alleges that all defendants are operated by the same individual (Compl. ¶ 12), although he does not name that individual as a defendant in his complaint. From plaintiff's complaint, exhibits and inquest submissions, we infer that Ira Jack Allen ("Allen") is the individual allegedly operating all defendants. (Compl. Exs. B-C, Decl. 2, 27).[6]

---

[5] Plaintiff's inquest submissions include a letter on the letterhead of defendant Bun Bun Music, Inc. confirming the address alleged in plaintiff's complaint. (Declaration of Damages, "Decl.," Dkt. 20, Apr. 21, 2014, 27).

[6] We take notice of Big East Entertainment v. Zomba Enterprises, 453 F. Supp. 2d 788 (S.D.N.Y. 2006), aff'd, 259 Fed. Appx. 413 (2d Cir. 2007), in which this same music and its copyright interests were in dispute. In Big East Entertainment Mr. Allen was identified as the owner of Big East and its affiliated entities, on whose behalf Big East asserted claims of ownership of the "Criminal Minded" copyright against the defendant organization. 453 F. Supp. 2d at 790. The case was dismissed under Rule 56 in part because Big East had failed to establish its own ownership of the copyright -- which originally belonged to its subsidiary, named Rock Candy -- and therefore was found not to have standing to vindicate any interests related to the copyright. Id. at 797-98. See Big East Entertainment, 259 Fed. Appx. at 414 (affirming based on Big East's lack of standing).

**PLAINTIFF'S INQUEST SUBMISSION**


In plaintiff's inquest submissions, he clarifies that he is seeking $1.5 million in "lost profit and tarnished business reputation" from defendants. The injuries that he recites include "causing confusion with license holders . . . which have barred the plaintiff from collecting royalties currently due and in the future on all accounts regarding the unauthorized license and making it difficult for plaintiff to solicit and license his own property for profit." (Decl. 3).


In support of plaintiff's effort to justify relief, he lists in his inquest submission six separate transactions that he labels as "[i]nfringements." The list reflects licenses to a variety of prominent record companies -- including, Def Jam Records, Sony/Epic Records, Roc A Fella Records, and Columbia Records -- although plaintiff includes documentation of only three licenses, dating from 2002, 2003, and 2005. (Decl. 1 and Ex A-C).

7

Plaintiff also asserts in his submission that Mr. Allen, who was "custodian of the property" through his control of Bun Bun, had given these licenses without authorization from the then-owners of the copyrights. As support for his contention, he appends an April 12, 2014 letter from Mr. Milton Turner, identified as the Chief Financial Officer of defendant Bun Bun Music, Inc., recounting that Mr. Allen -- described as the former CEO of the defendants -- had "illegally" licensed the sound master recordings of "Criminal Minded . . . to multiple record labels" for his own profit during a period when B-Boy and related companies, owned by a William Kamarra, had ownership of this and various other musical properties. (Decl. Ex D. 27).

The inquest submission lists the following infringements and associated "Profits and Damages":

1.  Sample licensed to Def Jam Records for Recording Artist Rihanna for album "Music of the Sun": 1 million records for $425,000.00 in August 2005;

2.  Sample licensed to Epic Records for Recording Artist Jennifer Lopez for song "Jenny from the Block": 1 million records for $500,000.00 in October 2004;

3.    Sample licensed to Roc A Fella Records for Recording
      Artist Young Gunz for album "The Chain Gang Vol. 2":
      500,000 records for $135,000.00 in November 2005;

4.    License to Traffic Entertainment d/b/a Landspeed Records
      for entire Criminal Minded Album: collective value of
      $250,000.00 (no date provided);

5.    License to Morgan Khan: $390,000.00 plus $150,000 (no
      date provided); and

6.    Sample licensed to Columbia Records for Recording Artist
      Nas for the single "Destroy and Rebuild": 1 million
      records for $420,000.00 (no date provided).

(Decl. 1-2). In support of these claims, plaintiff provides
documentation for the license agreements referred to in claims 1,
2, and 3. These agreements include payment terms that involve a
specified advance and a royalty percentage, but plaintiff does not
document the sales or royalty calculations on which he bases his
damages claims. (Decl. Exs. A-C). Plaintiff proffers no evidence
for infringement claims 4, 5, and 6.


    In plaintiff's submission, he does not mention, much less
address, the finding of this court in Big East Entertainment that
Mr. Allen's companies retained distribution and exploitation rights
to much, if not all, of the music found in the "Criminal Minded"
album. See Big East Entertainment, 453 F. Supp. 2d at 792. He also
does not address -- other than to list it as an alleged
infringement in his inquest submission (Decl. 1) -- the indication

9

found, _inter alia_, on the MTV website that the right to release the "Criminal Minded" album was purchased in 2002 by a Boston-based label, LandSpeed Records.(_See infra_ note 13 and discussion on pp. 31-33).

## LEGAL STANDARDS

A defendant's default is deemed to constitute a concession of all of the well-pleaded allegations in the complaint pertaining to liability, _see Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp._, 973 F.2d 155, 158 (2d Cir. 1992), and a party moving for a default judgment is entitled to "all reasonable inferences in its favor." _Finkel v. Romanowicz_, 577 F.3d 79, 84 (2d Cir. 2009) (citing _Au Bon Pain Corp. v. Artect, Inc._, 653 F.2d 61, 65 (2d Cir. 1981)). That said, to identify the well-pleaded allegations and their significance, the court is required to determine, at the least, whether those factual allegations amount to a cause of action as a matter of law. _Id._ at 84. A default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." _Laboratorios Rivas, SRL v. Ugly & Beauty, Inc._, 2013 WL 5977440, *4 (S.D.N.Y. Nov. 12, 2013), _adopted_, 2014 WL 112397 (S.D.N.Y. Jan. 8, 2014)(quoting

Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas, 509 Fed. Appx. 54, 56 (2d Cir. 2013)).

In evaluating legal adequacy under Rule 12(b)(6) or its equivalent, we apply the standard requirement that the allegations of the complaint must state a claim that is, on its face, "plausible."[7] In the default context, however, the court retains the discretion "to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action." Id. (quoting Au Bon Pain Corp., 653 F.3d at 65); cf. Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984)("the court has considerable latitude in deciding whether to require plaintiff to produce evidence in support of the claims before entering such a [default] judgment")(citing 10 C. Wright, A. Miller, M. Kane, Fed. Pract. & Proced. §§ 2685, 2688 (1983)). That is to say, the court may determine that -- apart from technical pleading requirements -- the record itself does not provide a plausible basis for relief. Finkel, 577 F.3d at 83-84. See e.g. Kleartex, Inc. v. Kleartex SDN BHD, 1994 WL 733688, *4 (S.D.N.Y. June 9, 1994)(citing Trans World

---

[7] The requirement that allegations must be plausible applies even if the plaintiff is pro se. As the Second Circuit has noted, "we still require that [the plaintiff] plead facts sufficient 'to state a claim to relief that is plausible on its face.'" Teichmann v. New York, 769 F.3d 821, 825 (2d Cir. 2014)(quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Airlines, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971), rev'd on other gds., 409 U.S. 363 (1973)(allegations in a complaint may be rejected as not "well pleaded" when they are implausible – that is, "not susceptible of proof by legitimate evidence")). The court, then, may look beyond the face of the complaint when "assessing the validity of a plaintiff's claim in the face of a default." Kleartex, 1994 WL 733688 at *4.[8] This particular aspect of the court's discretion will prove to be particularly significant to the analysis here.

For purposes of determining relief, we do not automatically accept the allegations of the complaint relating to damages or injunctive relief. See, e.g., Greyhound Exhibitgroup, Inc., 973 F.2d at 158 (2d Cir. 1992) (citing Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)(damages)); North American Karaoke-Works Trade Ass'n v. Entral Group Int'l, LLC, 2010 WL 2143661, *9 (S.D.N.Y. Feb. 24, 2010) (citing inter alia CFTC v. Vartuli, 228 F.3d 94, 98 (2d Cir. 2000)(injunction)). Indeed, "'while a default . . .

─────────────────

[8] The Second Circuit has observed that, "[f]or example, an allegation made indefinite or erroneous by other allegations in the same complaint is not a well-pleaded allegation. Other examples * * * are allegations which are contrary to facts of which the court will take judicial notice, or which are not susceptible of proof by legitimate evidence, or which are contrary to uncontroverted material in the file of the case." Trans World Airlines, 449 F.2d at 63 (internal citation omitted).

constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'" Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc., 655 F. Supp. 2d 177, 189-90 (E.D.N.Y. 2009)(quoting Flaks, 504 F.2d at 707). Similarly, a plaintiff seeing injunctive relief must justify that application by evidentiary submissions. See Am. Basketball Ass'n Players Ass'n v. Nat'l Basketball Ass'n, 404 F. Supp. 832, 834 (S.D.N.Y. 1975)(denying preliminary injunction because plaintiffs did not carry their burden to submit credible evidence in support of their application)(citing Stark v. New York Stock Exchange, 466 F.2d 743, 744 (2d Cir. 1972)).

The court employs a two-step analysis in calculating damages: (1) "determining the proper rule for calculating damages on ... a claim"; and (2) "assessing plaintiff's evidence supporting the damages to be determined under this rule." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); see also Braccia v. D'Blass Corp., 2011 WL 2848146, *3 (S.D.N.Y. June 13, 2011), adopted, 2011 WL 2848202 (S.D.N.Y. July 18, 2011); Fed. R. Civ. P. 55(a). To justify an award of damages, plaintiff must demonstrate "that there was a basis for the damages specified in the default judgment." See Transatlantic Marine Claims Agency, Inc.

v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting
Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir.
1989)). See also Pineda v. Masonry Constr., Inc., 831 F. Supp.2d
666, 671 (S.D.N.Y. 2011); Wicaksono v. XYZ 48 Corp., 2011 WL
2022644, *2 (S.D.N.Y. May 2, 2011), adopted, 2011 WL 2038973
(S.D.N.Y. May 24, 2011) (citing Lin v. Hayashi Ya II, Inc., 2009 WL
289653, *2 (S.D.N.Y. Jan. 30, 2009), adopted, 2009 WL 513371
(S.D.N.Y. Feb. 27, 2009)). The Court must look to whether the
plaintiff has established damages with "reasonable certainty."
Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111. Only
admissible evidence can be relied upon to make such a
determination. House v. Kent Worldwide Mach. Works, Inc., 359 Fed.
App'x. 206, 207 (2d Cir. 2010); see also Gray v. Proteus Sports &
Racing Cars Ltd., 2014 WL 7330859, *4 (S.D.N.Y. Dec. 23, 2014).

As for injunctive relief, notwithstanding a defendant's
default, the plaintiff must demonstrate by competent evidence at an
inquest that such relief is appropriate. See, e.g., N. Am.
Karaoke-Works Trade Ass'n, Inc. v. Entral Grp. Int'l, LLC, 2010 WL
2143661, *9 (S.D.N.Y. Feb. 24, 2010)(citing CFTC, 228 F.3d at 98;
Gucci America, Inc. v. Curveal Fashion, 2010 WL 308303, *2
(S.D.N.Y. Jan. 20, 2010); LaBarbera v. Avaline Trucking Inc., 2009
WL 3497491, *8 (E.D.N.Y. Oct. 28, 2009)), rejected in part on other

14

gds., 2010 WL 2158294 (S.D.N.Y. May 27, 2010). Generally, to justify entry of an injunction the plaintiff must show the inadequacy of any remedy in law and the likely prospect of irreparable harm if relief is not granted. See, e.g., Salinger v. Colting, 607 F.3d 68, 79-80 (2d Cir. 2010) (applying eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391-94 (2006); Winter v. NRDC, 555 U.S. 7, 20-22 (2008)). In the context of copyright cases, the Second Circuit looks to four factors, including likelihood of irreparable injury, absence of adequate legal remedies, a balance of hardships tipping to plaintiff, and a showing that public interest would not be adversely affected by such a ruling. Id. at 77-80 & n.7 (applying eBay Inc., 547 U.S. at 391-94)); EMI Apr. Music Inc. v. 4MM Games, LLC, 2014 WL 325933, *9 (S.D.N.Y. Jan. 13, 2014), adopted, 2014 WL 1383468 (S.D.N.Y. Apr. 7, 2014).

The court has discretion in deciding the procedures for presentation of the required evidence at an inquest: it may conduct an evidentiary hearing or it may base its decision "upon a review of detailed affidavits and documentary evidence." Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012)(citing inter alia, Fustok, 873 F.2d at 40). In this case, the court opted for reliance on

affidavits or the equivalent, with accompanying documentary submissions.

## ANALYSIS

Plaintiff's complaint and other papers are, not surprisingly, less than clear as to the legal theories that he propounds and as to the relief that he seeks. In view of his pro se status, we read those submissions with liberality and look to discern the most plausible legal theories that they may support. Stancuna v. New Haven Legal Assistance Inc., 383 F. App'x 23, 24 (2d Cir. 2010); Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 472 (2d Cir. 2006).

Plaintiff is plainly asserting -- and offers some evidence to support the assertion -- that over a period of years long predating his acquisition of the copyright in question, Mr. Allen set up a series of corporate entities and used them to issue licenses to various record companies to use music protected by the copyright, even though the then copyright owners -- B-Boy Records and B-Boy Records World Corporation -- had not authorized Mr. Allen to do so. Plaintiff also asserts, premised on the letter from Bun Bun's current Chief Financial Officer, that Mr. Allen then collected

16

royalties from the licensees and failed to turn some or all of those funds over to the copyright owners.

As for the relief that plaintiff seeks, in his inquest submission he requests a substantial award against the various corporate defendants because of "unjust enrichment" by defendants -- all entities controlled at some point by Mr. Allen[9] -- an apparent reference to their receipt of revenues that should have gone to the corporate owners of the copyright. (Decl. 2). As he states at the conclusion of his declaration, he is also claiming "lost profit and tarnished business reputation" resulting from "confusion" among the licensees, and he refers, in entirely conclusory terms, to an inability, apparently going forward, to collect royalties due on the "unauthorized licenses." He also suggests, again without detail, that these circumstances have made it difficult for him "to solicit and license" the copyright "for profit." (Decl. 2-3).

These allegations suggest several possible legal theories. In one respect, plaintiff seems to be claiming a right under the

_____

[9] The CFO's letter, which plaintiff submits in the inquest, refers to Allen as an "ex-partner" and "former CEO" of the defendant companies. (Decl. Ex. D).

17

Copyright Act to recover for past "infringement[s]" -- thus his reference to recovery of royalties (Compl. ¶ 25) -- presumably premised on the assertion that performances by the putative licensees under the unauthorized licenses amounted to infringement. He also appears to be seeking the royalties paid to defendants under those unauthorized licenses on the basis of a tort theory of unjust enrichment and also fraud.[10] He seems as well to be asking for a tort recovery for anticipated future injury to his business in the form of interference with his ability to collect future royalties and to license the copyright that he purchased. He may also be understood to assert a separate claim of fraud in the inducement -- a fraud that targeted either him or the prior owners of the copyrights -- for which he also seeks compensation. As for injunctive relief, although he alluded to it in general terms in his complaint, his inquest submission does not directly address it. Nonetheless, he may be heard to request an order for defendants to cease misrepresenting themselves as the owners of the copyright and to turn over royalties to be received by them in the future from

---

[10] As noted, he alleges that defendants fraudulently "registered" various works with ASCAP and the Harry Fox Agency. (Compl. ¶ 22). We infer that he is asserting that defendants falsely identified themselves as the owners of the various copyrights when listing these works with ASCAP and others, hence potentially triggering payments to them for public performances of the works in question.

the invalidly licensed record companies.

We address these various theories in order.

## A. Damage Claims Under the Copyright Act

The Copyright Act authorizes either actual or statutory damages related to infringement. 17 U.S.C. § 504.

### 1. Unavailability of Relief for Pre-Sale Infringements

Plaintiff appears to be seeking infringement profits or some other form of monetary relief for infringements of the copyright that he purchased two days before filing suit. Necessarily, then, he is primarily seeking relief for infringements that occurred -- if at all -- before he owned the copyright. This he cannot do on the current record.

"The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b)(emphasis added).  The Second Circuit has held that although

copyrights can be assigned, the assignee lacks standing to pursue claims for pre-sale infringements unless they are "expressly included in the assignment." <u>ABKCO Music, Inc. v. Harrisongs Music, Ltd.</u>, 944 F.2d 971, 980 (2d Cir. 1991). "Rather, the assignee is only entitled to bring actions for infringements that were committed while it was the copyright owner and the assignor retains the right to bring actions accruing during its ownership of the right, even if the actions are brought subsequent to the assignment." <u>Id.</u> (citing 3-12 Nimmer on Copyright § 12.02).

Here, plaintiff purportedly acquired ownership of the copyright on July 23, 2013, but the alleged infringements, if any, appear to have occurred years earlier. (Compl. Exs. B-C; Decl. Exs. A-D).[11] Since the proffered bill of sale lacks any language assigning the seller's right to assert claims for infringements predating the sale, plaintiff cannot obtain relief for such infringements.

--------

[11] As we have noted, plaintiff proffers evidence of early licensing activities, but does not document actual infringments, which could involve public performance of the copyrighted music. <u>See</u> pages 8-9, <u>supra</u>.

**2. Plaintiff has not Proven Any Post-Purchase Damages**

Plaintiff has also failed to prove any damages under the Copyright Act arising after his purchase of the rights to "Criminal Minded."

First, other than conclusory assertions as to the potential for post-assignment injury, plaintiff offers no specifics, much less evidence of any harm to him since he acquired the copyright. This is fatal to his claim for such damages.

Second, according to plaintiff's own inquest submission, Ira Jack Allen was the principal who controlled the defendants and their allegedly infringing conduct in the prior decade. Yet, plaintiff demonstrates to the court, through the April 12, 2014 letter from defendant Bun Bun Music, Inc., that Mr. Allen is no longer affiliated with defendants. (Decl. Ex. D ("my cousin and ex-partner Jack Allen former CEO of Bun Bun, Music Inc., Bun Bun Music Publishers Inc., Big East Entertainment Group Incorporated, J&B Management and B-Boy Rercords Inc.")). Third, as noted, in <u>Big East Entertainment</u> Judge Sweet found that in a 1987 settlement agreement executed far closer to the time of the original recording, Mr. Allen's companies had retained the rights to "distribute and

exploit the recordings" of much, if not all, of the music on the "Criminal Minded" album. Big East Entertainment , Inc., 453 F. Supp. 2d at 792.

Since Mr. Allen is concededly no longer involved with defendants, and since in any event, at some point Mr. Allen's companies legitimately retained the distribution and exploitation rights for much, if not all, of the album, we find it highly implausible that plaintiff would be suffering any current harm under the Copyright Act from licensing activities by these defendants. And certainly, the only relevant evidence plaintiff presents does not point to any infringement occurring after his purchase.

### 3. Plaintiff Has Not Pleaded or Proven Any Infringement

Even if plaintiff's claims were not barred by statute and failure of proof, his pleading would be insufficient to make out a claim of infringement under the Copyright Act. Only rights granted to the copyright holder in 17 U.S.C. § 106 are protected under the Act. See Elektra Entertainment Group, Inc. v. Barker, 551 F. Supp. 2d 234, 246 (S.D.N.Y. 2008). To assert a violation of rights under section 106, the plaintiff must allege and prove either a direct

infringement or a contributory infringement. <u>See</u> <u>Laine v. Pride</u>, 2010 WL 199927, *7 (S.D.N.Y. Jan. 19, 2010)(discussing the legislative history and intent of the Copyright Act).

Authorizing another entity to use copyrighted material "does not create an independent, direct claim of copyright infringement." <u>Laine</u>, 2010 WL 199927 at *7 (citing <u>Elektra Entertainment Group, Inc.</u>, 551 F. Supp. 2d at 246); <u>National Football League v. Primetime 24 Joint Ventures</u>, 1999 WL 163181, *4 (S.D.N.Y. Mar. 24, 1999)("17 U.S.C. § 106 does not create an infringeable right of authorization independent of infringement of one of the specific enumerated rights set forth in that section. . . . '[U]se of the phrase "to authorize" is intended to avoid any questions as to the liability of contributory infringers.'" (referring to the legislative record, internal citations omitted))). Plaintiff alleges, and seeks to prove, only the licensing of the album, or portions of it, to various recording companies, not their actual use of the music.[12]

As for contributory infringement, "[i]n order to establish liability for contributory or vicarious copyright infringement, a

---

[12] Plaintiff does not name as defendants any of the recording companies.

plaintiff must first prove that direct infringement of its works occurred. . . ." Laine, 2010 WL 199927 at *7 (quoting Arista Records, Inc. v. Mp3Board, Inc., 2002 WL 1997918, *3 (S.D.N.Y. Aug. 29, 2002)(citing Sony Corp. of Amer. v. Universal City Studios, 464 U.S. 417 (1984))). In Laine, the plaintiff claimed that her statutory rights had been violated when the defendant authorized a third party to make copies of artwork for which she had a bill of sale and assignment of the copyright. 2010 WL 199927 at *2. The court dismissed this claim for two reasons. First, the complaint only accused the defendant of "authorizing" another to use the copyright; therefore, it failed to allege a direct infringement. Id. at *7. Second, a contributory-infringement claim failed, because the plaintiff had not specifically alleged any direct infringement: "[a]ll Plaintiff claims is that the Professor was authorized 'to make copies,' and that he 'has infringed the copyrights in Ely works and refused to cease his infringing conduct.'" Id. The court reasoned that the complaint did not specifically allege that the professor had actually copied any artwork or otherwise violated an enumerated right in section 106, and the invocation of the conclusory term "infringement" did not suffice as a fact pleading to state the claim. Id.

Here, plaintiff has alleged -- and supported his allegations

with evidence in the form of contracts and license agreements -- that defendants authorized others to use the copyright. However, authorization of use does not create an independent claim of direct infringement -- there must be an allegation and proof of direct infringement arising from that authorization. The entities that allegedly licensed plaintiff's copyright from defendants -- Def Jam Records, Epic Records, Roc A Fella Records, Traffic Entertainment, Morgan Khan, and Columbia Records (Decl. 1-2) -- are not named as defendants. Moreover, the plaintiff does not allege that these entities actually infringed the copyright. The inquest submissions provide evidence that some of these entities entered into an agreement with defendants, but there is no evidence that these entities actually used the copyrighted material, and, if so, when. Plaintiff makes conclusory assertions about album and song sales (Decl. 1-2), but he offers no support for the implicit contention that the albums and songs actually included portions of the copyrighted recording. Even construing plaintiff's submissions liberally, we cannot identify an allegation of direct infringement from which we can derive a contributory infringement on the part of defendants.

**B. Claim of Unjust Enrichment**

As noted, plaintiff also refers to "unjust enrichment" as a theory for recovery from defendants. (Decl. 2). In New York, "'[t]he theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement.'" Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586-587 (2d Cir. 2006) (quoting Goldman v. Metropolitan Life Ins. Co., 5 N.Y.3d 561, 572, 807 N.Y.S.2d 583, 587 (2005)). "'To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'" Id. (quoting Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000)).

To the extent that a state common-law claim of unjust enrichment claim applies to copyrighted material, it is preempted by the Copyright Act, unless the misconduct is distinct from the scope of the conduct covered by the Act. Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004); 1-1 Nimmer on Copyright § 1.01. The Briarpatch Court reasoned that the second and third elements of an unjust enrichment claim, when applied to copyright infringement, are covered by the Copyright

Act, while the first element of the defendant's enrichment did not "go[] far enough to make the unjust enrichment claim qualitatively different from a copyright infringement claim." 373 F.3d at 306; see also Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 432 (2d Cir. 2012)(a claim that "defendant was unjustly enriched through the use of [plaintiff's] idea or work . . . is not materially different from a claim for copyright infringement that requires a plaintiff to prove that the defendant used, reproduced, copied, or displayed a copyrighted work," and is therefore preempted.); Berry v. Deutsche Bank Trust Co. Americas, 2008 WL 4694968, *6 (S.D.N.Y. Oct. 21, 2008), aff'd, 378 Fed. Appx. 110 (2d Cir. 2010)(dismissing unjust-enrichment claim related to infringement on preemption grounds because it was "qualitatively the same as a copyright infringement claim").

Here, plaintiff's unjust-enrichment claims are unavailing for several reasons. First, as with his apparent claims of copyright infringement, plaintiff's proffered evidence, as well as the timing of his lawsuit -- two days after purported acquisition of the copyright -- indicates that any unjust enrichment by defendants occurred prior to his purchase of the copyright. If so, then a claim for unjust enrichment would have accrued to the prior copyright owners, who were entitled both to control the use of the

27

copyrighted music while they owned the copyright and to receive the royalties earned under any licensing agreement. Second, plaintiff makes no allegation, and offers no evidence, that the prior owners ever assigned these accrued claims to him when they purportedly sold him the copyright. Absent such an assignment, plaintiff cannot prevail on such a claim, since he cannot demonstrate prong-two of the unjust enrichment analysis -- that the enrichment was at his expense. Plaintiff makes no showing that defendants received any revenues related to the allegedly illegitimate licenses after he purchased the copyright. Finally, even if plaintiff could demonstrate the elements of unjust enrichment, his claim is preempted because his submissions and allegations do not go beyond the definition of infringement proscribed by the Copyright Act.

## C. Claim of Fraud

The pleaded facts are also insufficient to state a claim of fraud. New York law requires a plaintiff asserting fraud to "allege that: (1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance." Barnhart v. Federated Department Stores, Inc., 2005 WL 549712, *7 (S.D.N.Y.

Mar. 8, 2005)(citing <u>Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.</u>, 98 F.3d 13, 19 (2d Cir. 1996), and others). Additionally, "fraud claims may not be premised on false statements on which a third party relied." <u>Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.</u>, 400 F. App'x 611, 613 (2d Cir. 2010)(citing <u>New York v. Smokes-Spirits.com, Inc.</u>, 541 F.3d 425, 454 (2d Cir. 2008)( "allegations of third-party reliance ... are insufficient to make out a common law fraud claim under New York law."); <u>Cement & Concrete Workers v. Lollo</u>, 148 F.3d 194, 196 (2d Cir. 1998)).

In <u>Barnhart</u>, a musician and owner of a copyrighted song alleged that the defendants had committed fraud by misrepresenting to the music-rights society ASCAP and others that they were the true owners of the copyright. <u>Id.</u> at *8. The court dismissed the plaintiff's claims because he only established that a third party had relied on the misrepresentation, and not that he himself had relied upon it. <u>Id.</u>

Here, plaintiff appears to assert that defendants fraudulently misrepresented themselves to third parties -- specifically, ASCAP and the Harry Fox Agency -- as the true owners of the copyright. Plaintiff does not allege that he personally relied on defendants'

misrepresentations, nor can we construe plaintiff's complaint to allege such reliance, because Mr. Thurman alleges that he purchased the copyright from entities unconnected to defendants and apparently years after these misrepresentations were made.

Plaintiff also cannot prevail on a somewhat different theory of fraud -- that is, that he was induced by a material misrepresentation to enter into a contract with the sellers of the copyright. First, he does not allege that any misrepresentations were made to him in connection with the purchase of the copyright, which is the only contract into which he purports to have entered. Second, he can scarcely say that he was misled at the time of his purchase. As noted, he filed his lawsuit only two days after purchasing the copyright. Presumably, then, he was fully aware at the time of purchase that defendants had been engaged in improper licensing of the copyrights and misappropriation of the resultant royalties. That being the case, he cannot be assumed -- or found -- to have been misled by anyone.

We further note that the scenario painted by plaintiff regarding the transaction appears substantially implausible. First, although he appears to claim that the copyright was particularly valuable because of the fame of the album in question, the owners

30

transferred the copyright to him for nothing more than an unsecured promissory note, with no payment structure or deadline, despite the fact that multiple recording companies were licensees. Second, after supposedly innocently acquiring the copyright, plaintiff was in a position to file, on a <u>pro</u> <u>se</u> basis, a detailed complaint two days later, noting all the entities that had supposedly deprived the sellers of the copyright of their rights to control licensing of the music and to profit by licensee payments. Then, in filing his lawsuit, plaintiff carefully did not name Mr. Allen as a defendant, even though Mr. Allen was supposedly the orchestrator of this misconduct.

Finally, by the time of plaintiff's purchase, he was presumably on notice that there was reason to question whether B-Boy Records, Inc. and B-Boy Records World Corporation -- the purported owners of the copyright -- were in fact the owners at that time. Indeed, there is significant information available online that, had plaintiff conducted a search, would have made him aware of undisputed reports that B-Boy had sold the rights to its own complete catalogue more than a decade earlier to an entity known as LandSpeed Records (later known as Traffic Entertainment

Group), which re-released the album in 2002 and 2006.[13] At the very

---

[13] Both MTV and B-Boy Records recount that a Boston-based
label, LandSpeed Records, purchased the rights to release
"Criminal Minded" and did so in 2002. LandSpeed Records
reorganized as Traffic Entertainment Group and re-released the
album in 2006 under that new label. MTV Artists, "About Criminal
Minded" http://www.mtv.com/artists/criminal-minded/biography
(last visited Feb. 20, 2015); B Boy Records, "B Boy Records World
History" http://bboyrecordsworld.webs.com/aboutus.htm (last
visited Feb. 20, 2015). Additionally, online sites from which one
can buy the album indicate that Traffic Entertainment Group, Inc.
has the right to publish the music. iTunes, "Criminal Minded,
Boogie Down Productions,"
https://itunes.apple.com/us/album/criminal-minded/id323198288
(last visited Feb. 20, 2015)("(p) 2005 Traffic Entertainment
Group"; Amazon.com, "Criminal Minded Deluxe Edition,"
http://www.amazon.com/Criminal-Minded-Deluxe-Boogie-Productions/d
p/B0011WPARE/ref=sr_1_1?ie=UTF8&qid=1424451967&sr=8-1&keywords=cr
iminal+minded+deluxe+edition (last visited Feb. 20, 2015)("Label:
Traffic Entertainment Group/B Boy Records").
   Our own research failed to yield direct support for the
assertion that LandSpeed Records became Traffic Entertainment
Group, Inc.; however, the corporation records division of the
State of Massachusetts revealed that Traffic Entertainment Group,
Inc. was originally incorporated on December 3, 2002 as Hit Man,
Inc., changed its name to Traffic Entertainment Group, Inc. on
December 10, 2002, and shared the same address, 39 Broad Street,
Quincy, MA, with LandSpeed Records, Inc. in late 2002, when
Traffic Entertainment Group, Inc. was said to have assumed the
business of LandSpeed Records. See Secretary of the Commonwealth
of Massachusetts, "Corporations Division --Search for a business
entity"
http://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSearch.aspx,
last visited Jan. 14, 2015. This much information lends support
to the assertions online that LandSpeed Records became Traffic
Entertainment Group, Inc.
   While we understand that a court may not make factual
findings based on information found on the internet, we may use
internet research to confirm our intuition and, as here, take
notice that information was readily available on the internet
that significantly undermines plaintiff's assertion of reasonable
reliance on representations that the copyright was available for
sale to him by the parties from whom he purchased it. See United

least, these reports should have put plaintiff on notice that B-Boy Records, Inc. and B-Boy Records World Corporation may not have been in position to convey any rights under their copyright.

In sum, plaintiff has not shown that he has a viable fraud claim. Moreover, even if he could establish such a claim on the current record, any damages are entirely speculative. His inquest submissions offer no evidence of monetary damage derived from the misrepresentations to the music licensing agencies, and he has equally not established that he suffered any losses from his purchase of the copyright, much less that such losses are attributable to misrepresentations on which he reasonably relied.

## D. Plaintiff's Claim for Injunctive Relief

"The Copyright Act provides the owner of a copyright with a potent arsenal of remedies against an infringer of his work. . . ." Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 433-34 (1984). In addition to actual or statutory damages, the Act

---

States v. Bari, 599 F.3d 176, 179-80 (2d Cir. 2010)(discussing Fed. R. Evid. 201 in the context of judges conducting internet research and finding legitimate a court's use of internet research to "confirm hunches," and thereby take notice of facts learned on the web and derived from the judge's hunch).

also authorizes courts to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). For instance, a court may order compulsory payments by a defendant of any royalties received and any profits gained on account of the copyright licenses. See 4-13 Nimmer on Copyright § 13.05. Additionally, if defendants control master recordings, as plaintiff may be alleging, section 503 of the Act authorizes the seizure of those materials used to infringe the copyright. 17 U.S.C. § 503(a)(1)(A),(B).

Plaintiff does not address injunctive relief in his inquest submission, although he refers to it in passing in his complaint. In any event, even if infringement were assumed to have occurred, plaintiff fails to demonstrate a prospect of future irreparable injury, nor does he provide evidence that the balance of hardships favors him, or that the public interest would not be disserved by any injunctive relief. The prospect of future irreparable harm is a notable point of obscurity since, according to plaintiff's own submissions, Mr. Allen is no longer in control of the defendant companies. Moreover, in view of the findings in Big East Entertainment that Mr. Allen's companies apparently retained "the right to distribute and exploit the recordings . . ." that included most of the songs on the "Criminal Minded" album, 453 F. Supp. 2d

34

at 792, the true ownership of the relevant rights to this music --
and with it the purported basis for any injunctive relief -- is not
perceptible from plaintiff's submissions or other facts of which we
can take judicial notice.

In addition, to the extent that any injunctive relief mandated
direct payment of royalties to plaintiff, it appears that Traffic
Entertainment Group, Inc. would be an indispensable party, since it
is generally understood to be the record company currently in
possession of the music rights at the center of this dispute.
See pages 31-33 supra. Federal Rule of Civil Procedure 19(a) makes
compulsory the joinder of a party when "(1) in the person's absence
complete relief cannot be accorded among those already parties, or
(2) [A] the person claims an interest relating to the subject of
the action and  [B] is so situated that the disposition of the
action in the person's absence may (i) as a practical matter impair
or impede the person's ability to protect that interest. . . ."
Here, with both ownership of the copyright and the right to exploit
the album at least obscure, injunctive relief would be
inappropriate without the presence of that company.[14]

--------

[14] Obviously, to the extend that Mr. Thurman might seek an
order directing licensees to pay royalties to him, the licensees
would also need to be joined as parties.

**CONCLUSION**

For the reasons set forth above, we recommend that the court decline to award plaintiff his requested monetary relief and further decline to award him injunctive relief.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Colleen McMahon, Room 1640, 500 Pearl Street, New York, New York, 10007-1312, and to the undersigned, Room 1670, 500 Pearl Street, New York, New York, 10007-1312. Failure to file timely objections may constitute a waiver of those objections, both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636 (b)(1); Fed. R. Civ. Pro. 72, 6(a), 6(e); Thomas v. Arn, 474 U.S. 140 (1985); DeLeon v. Strack, 234 F.3d 84, 86 (2d. Cir. 2000) (citing Small v. Sec'y. of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)).

Dated: New York, New York
       February 25, 2015


                              RESPECTFULLY SUBMITTED,


                              _____
                              MICHAEL H. DOLINGER
                              UNITED STATES MAGISTRATE JUDGE




Copies of the foregoing Order have been sent today by mail to:

Mr. Sean Thurman
74 W. 92nd Street
#17D
New York, NY 10025

Bun Bun Music Inc.
Big East Entertainment Group Incorporated
Bun Bun Music Publishers, Inc
J&B Management
B-Boy Records & Associate, Inc
545 Edgecombe Ave.
Suite 3L
New York, NY 10032